IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
DARRELL WILLIAMS, # 73459-509,  *
                                *
    Petitioner,                 *
                                * CRIMINAL NO. 21-00165-TFM-B
vs.                             * CIVIL ACTION NO. 23-00320-TFM-B
                                *
UNITED STATES OF AMERICA,       *
                                *
    Respondent.                 *
```

**REPORT AND RECOMMENDATION**

Pending before the Court is Petitioner Darrell Williams' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 348). This matter has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration, the undersigned hereby recommends that Williams' § 2255 motion (Doc. 348) be **DENIED**, that this action

---

[1] The undersigned has reviewed Williams' motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings in this case.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Darrell Williams. The undersigned further recommends, in the event Petitioner Williams requests a certificate of appealability and seeks to appeal *in forma pauperis,* that said requests be **DENIED**.

I. <u>BACKGROUND</u>

Petitioner Darrell Williams ("Williams") was indicted along with four other individuals and charged with conspiracy to possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 846 (count two) and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (count three). (Doc. 1). After a four-day trial that began on October 24, 2022, a jury found Williams guilty as to both charged counts. (Docs. 257, 259, 262, 365). On February 17, 2023, the Court sentenced Williams to 648 months in prison, consisting of consecutive terms of 324 months as to counts two and three. The Court entered a judgment consistent with the pronounced sentence on March 6, 2023. (Doc. 321). Williams did not appeal his conviction or sentence.

On August 7, 2023,[3] Williams, proceeding *pro se*, filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or

---

[3] Under the mailbox rule, "a *pro se* prisoner's motion to vacate is

2

correct sentence. (Doc. 348). In the motion, Williams raises four grounds for relief, all based on allegations that his detention and imprisonment violate the "Treaty of Peace & Friendship between Morocco & the United States of America 1787, as amended 1837" (hereinafter "Morocco Treaties").[4] (Id. at 6-10).

---

deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam). Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). Williams' motion states that it was signed and placed in the prison mailing system on August 7, 2023. (See Doc. 348 at 14).

[4] Williams is apparently referring "to the Treaty with Morocco sealed by the Emperor of Morocco on June 23, 1786, and ratified by the United States July 18, 1787. The Treaty with Morocco is one of the Barbary Treaties (executed, during 1795–1836 between the United States and semi-autonomous North African city-states of Algiers, Tunis, and Tripoli, and the Sultanate of Morocco)." El Ameen Bey v. Stumpf, 825 F. Supp. 2d 537, 558 n.10 (D.N.J. 2011). The treaty "provided for the United States diplomatic representation in Morocco and open commerce at any Moroccan port on the basis of 'most favored nation.' It also established the principle of non-hostility when either country was engaged in war with any other nation. Most importantly, the treaty provided for the protection of U.S. shipping vessels at the time when most American merchant ships were at risk of harassment by various European warships." United States v. Foster, 2021 U.S. Dist. LEXIS 249799, at *4-5, 2021 WL 7286016, at *2 (N.D. Ala. Nov. 5, 2021) (citing the remarks of United States Senator Bob Casey in 2012 on the 225th anniversary of the Morocco Treaty of Peace and Friendship, 158 Cong. Rec. S5727-01, 2012 WL 3100992 (daily ed. July 31, 2012)), report and recommendation adopted, 2022 U.S. Dist. LEXIS 4361, 2022 WL 94916 (N.D. Ala. Jan. 10, 2022). "[W]hile the 1787 Treaty of Marakesh was in fact ratified by the United States Congress in 1787, the treaty was only binding for fifty years." Houston v. Houston, 2021 U.S. Dist. LEXIS 180198, at *7, 2021 WL 4290198, at *3 (E.D. Mich. Sept. 21, 2021), aff'd, 2022 U.S. App. LEXIS 15110, 2022 WL 3452473 (6th Cir. June 1, 2022). "The 1836

In ground one, Williams claims that his detention and imprisonment violate Article 16 of the Morocco Treaties[5] because:

> When the United States of America through its government <municipal> charged/forced the aforementioned crimes <commercial> on (me), the same was a declaration of war through the operation of the Trading with the Enemy Act. There is no proof to the contrary.

(Id. at 6).

In ground two, Williams claims that his detention and imprisonment violate Article 20 of the Morocco Treaties[6] because:

---

Treaty of Morocco apparently replaced the 1787 Treaty of Marakesh after the Treaty of Marakesh expired." Id., 2021 U.S. Dist. LEXIS 180198, at *8, 2021 WL 4290198, at *3. "In fact, the United States Department of State does not list the 1787 Treaty of Marakesh as an active treaty, but the 1836 Treaty of Morocco is listed as a treaty currently in force." Id. The provisions of the 1836 Treaty of Morocco are "vastly similar" to those of the 1787 treaty. Id., 2021 U.S. Dist. LEXIS 180198, at *9, 2021 WL 4290198, at *3.

[5]  Article 16 of the 1836 Treaty of Morocco provides:

> In case of a war between the parties, the prisoners are not to be made slaves, but to be exchanged one for another. Captain for Captain, Officer for Officer, and one private man for another; and if there shall prove a deficiency, on either side, it shall be made up by the payment of one hundred Mexican dollars for each person wanting. And it is agreed, that all prisoners shall be exchanged in twelve months from the time of their being taken, and that this exchange may be effected by a merchant, or any other person, authorized by either of the parties.

The Barbary Treaties 1786-1816: Morocco - Treaty of Peace; September 16, 1836, The Avalon Project at Yale Law School, https://avalon.law.yale.edu/19th_century/bar1836t.asp (last visited Jan. 22, 2024).

[6]  Article 20 of the 1836 Treaty of Morocco provides:

4

> A dispute between parties if any was not decided by the consul, and the records do not reveal (I) waived the right(s): there was no consent, contract or joinder – no law whatsoever.  There is no proof to the contrary.

(Id. at 7).

In ground three, Williams claims that his detention and imprisonment violate Article 21 of the Morocco Treaties[7] because:

> A Moor (me) has been forced under penalty of a misnomer(s) be it capital <DARRELL WILLIAMS> offense where not any killed or wounded.  There is no proof to the contrary.

(Id. at 8).

---

> If any of the citizens of the United States, or any persons under their protection, shall have any dispute with each other, the Consul shall decide between the parties; and whenever the Consul shall require any aid, or assistance from our government, to enforce his decisions, it shall be immediately granted to him.

The Barbary Treaties 1786-1816: Morocco - Treaty of Peace; September 16, 1836, The Avalon Project at Yale Law School, https://avalon.law.yale.edu/19th_century/bar1836t.asp   (last visited Jan. 22, 2024).

[7]   Article 21 of the 1836 Treaty of Morocco provides:

> If a citizen of the United States should kill or wound a Moor, or, on the contrary, if a Moor shall kill or wound a citizen of the United States, the law of the Country shall take place, and equal justice shall be rendered, the Consul assisting at the trial; and if any delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.

The Barbary Treaties 1786-1816: Morocco - Treaty of Peace; September 16, 1836, The Avalon Project at Yale Law School, https://avalon.law.yale.edu/19th_century/bar1836t.asp   (last visited Jan. 22, 2024).

5

In ground four, Williams claims that his detention and imprisonment violate Article 4 of the Morocco Treaties[8] because:

> All humble attempts to communicate the necessary signal and/or pass were disregarded by parties ab initio. As a Moor American National, not an enemy, billigerent, rebel or terrorist subject to the Trading with the Enemy Act of October 6, 1917, the Emergency Banking Relief Act of March 9, 1933, the Patriot Act of October 26, 2001 or any other public policy and/or statute of the United States or its subsidiary states, possessions or territory. There is no proof to the contrary.

(Id. at 10).

The Government filed a response in opposition to Williams' § 2255 motion, in which it argues that the motion is due to be denied because Williams' claims are procedurally defaulted and frivolous. (Doc. 354). Williams did not file a reply to the Government's response. Thus, Williams' § 2255 motion is ripe for review.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

---

[8]  Article 4 of the 1836 Treaty of Morocco provides:

> A signal, or pass, shall be given to all vessels belonging to both parties, by which they are to be known when they meet at sea: and if the Commander of a ship of war of either party shall have other ships under his convoy, the declaration of the Commander shall alone be sufficient to exempt any of them from examination.

The Barbary Treaties 1786-1816: Morocco - Treaty of Peace; September 16, 1836, The Avalon Project at Yale Law School, https://avalon.law.yale.edu/19th_century/bar1836t.asp (last visited Jan. 22, 2024).

6

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

### III. DISCUSSION

The Government contends that Williams' claims that his imprisonment violates the Morocco Treaties are procedurally defaulted because he failed to raise them on direct appeal. (Doc. 354 at 1, 3-4). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." Lynn, 365 F.3d at 1234. "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further

7

factual development." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam).

If a defendant fails to pursue an available claim on direct appeal, he can avoid a procedural bar only by establishing one of two exceptions to the procedural default rule. "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." Lynn, 365 F.3d at 1234 (emphasis in original). Under the second exception, a court will consider "a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam). To meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (quotation omitted).

Williams' claims that his detention and imprisonment violate Articles 16, 20, 21, and 4 of the Morocco Treaties were available on direct appeal. See, e.g., United States v. Toader, 409 F. App'x 9, 13 (7th Cir. 2010). However, Williams did not file a direct appeal challenging his conviction or sentence. Therefore, he is barred from raising these claims in the instant § 2255 motion, unless he can show cause and prejudice or a fundamental miscarriage of justice. Williams has neither alleged nor established cause and actual prejudice, nor has he attempted to show that he is

8

actually innocent of the crimes for which he was convicted. Accordingly, Williams' claims are procedurally defaulted and may not be raised in this § 2255 proceeding.

Additionally, Williams' claims are frivolous. As other federal courts addressing similar claims have held, nothing in the Morocco Treaties deprives a federal court of jurisdiction over a person who asserts Moorish nationality or otherwise exempts individuals who claim Moorish nationality from prosecution for crimes committed in the United States. See United States v. Foster, 2021 U.S. Dist. LEXIS 249799, at *5, 2021 WL 7286016, at *2 (N.D. Ala. Nov. 5, 2021) ("As numerous courts have found, Foster's argument that the Treaty of Friendship and Peace deprives a federal court of jurisdiction over a person who asserts Moorish nationality is meritless."), report and recommendation adopted, 2022 U.S. Dist. LEXIS 4361, 2022 WL 94916 (N.D. Ala. Jan. 10, 2022); United States v. Boone, 2021 U.S. Dist. LEXIS 5116, at *5, 2021 WL 84398, at *2 (E.D. Cal. Jan. 11, 2021) ("Nothing in this treaty exempts the Movants, by virtue of their nationality, from criminal prosecution in the United States."), report and recommendation adopted, 2021 U.S. Dist. LEXIS 67803, 2021 WL 1297557 (E.D. Cal. Apr. 7, 2021); United States v. Stokes, 2013 U.S. Dist. LEXIS 76001, at *7, 2013 WL 2387763, at *3 (N.D. Ohio May 30, 2013) (finding "nothing" in the 1787 Treaty of Peace and Friendship "which supports the Defendant's position that his

nationality exempts him from prosecution in the United States"); Brown-Bey v. Hooks, 2018 U.S. Dist. LEXIS 216000, at *5, 2018 WL 6788044, at *2 (W.D.N.C. Dec. 26, 2018) ("Petitioner's purported status as an 'indigenous Moor alien' does not place him beyond the reach of federal or state law."); Flanagan v. United States, 2014 U.S. Dist. LEXIS 41869, at *17, 2014 WL 1315230, at *6 (E.D. Mo. Mar. 28, 2014) (finding that defendant who asserted that the court lacked jurisdiction because he was a Moorish American and claimed the benefit of the Treaty of Peace and Friendship of 1787, "like any other individual found within the United States, is subject to federal laws, and he was properly indicted under federal law"); Toader, 409 F. App'x at 13 (rejecting as frivolous defendant's arguments "that the federal courts lack subject matter jurisdiction over him and that the laws he is charged with violating are inapplicable to him because he is a Native Asiatic Moorish National Citizen"); United States v. Burris, 231 F. App'x 281, 282 (4th Cir. 2007) (per curiam) (finding defendant's claim that the court lacked jurisdiction because of his alleged status as a Moorish American National to be "patently frivolous").

Indeed, "[t]he law is clear that Moorish Americans, like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside." Jones-El v. South Carolina, 2014 WL 958302, at *8 (D.S.C. March 11, 2014) (quotation omitted); see also United States v. James, 328 F.3d 953, 954 (7th Cir. 2003)

10

("Laws of the United States apply to all persons within its borders. Even if James were not a citizen of the United States (though he is, having been born here), he would be obliged to respect the laws of this nation.").

Further, even assuming *arguendo* that the Morocco Treaties could provide a valid basis for relief under § 2255, the treaty provisions that Williams alleges were violated are plainly inapplicable to the circumstances of this case. See Houston v. Houston, 2021 U.S. Dist. LEXIS 180198, at *10, 2021 WL 4290198, at *3 (E.D. Mich. Sept. 21, 2021) ("After reviewing the 1836 Treaty of Morocco, the Court agrees that nearly all the provisions deal with maritime or merchant issues and observes that the other provisions appear confined to events occurring in Morocco."), aff'd, 2022 U.S. App. LEXIS 15110, 2022 WL 3452473 (6th Cir. June 1, 2022). Accordingly, Williams' claims based on alleged violations of the Morocco Treaties are frivolous, and Williams is entitled to no relief under 28 U.S.C. § 2255.

### IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. See Rules Governing § 2255 Proceedings, R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that

11

an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate

to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Williams' claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Williams is not entitled to a certificate of appealability and should not be permitted to proceed *in forma pauperis* on appeal.

### V. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Darrell Williams' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 348) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Darrell Williams. It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

13

written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **24th** day of **January, 2024.**

                                              **/s/ SONJA F. BIVINS**
                                     **UNITED STATES MAGISTRATE JUDGE**